Eastern District of Kentucky
F I L E D
JUN 2 4 2022
AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

CRIMINAL ACTION NO. 5:22-CR-64-01-GFVT

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

V.                                    **PLEA AGREEMENT**

**MODERN THERAPY, LLC**                                               **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the sole Count of the Information, charging a violation of 21 U.S.C. § 846, conspiracy to unlawfully distribute controlled substances.

2. The essential elements of 21 U.S.C. § 846 are:

    (a) First, that two or more persons conspired, or agreed, to distribute a controlled substance; and

    (b) Second, that the Defendant knowingly and voluntarily joined the conspiracy.

    (c) Third, that the Defendant knew the purpose of the agreement or understanding and deliberately joined the agreement or understanding.

3. As to the sole Count of the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) The Defendant was a business organized under the laws of Florida that at all relevant times operated from a location in Hallandale, Florida. The Defendant

was owned by M.M., but the person with primary control of the business and its decisions was her son, J.M.

(b) Using the Internet, the Defendant marketed the sale of anabolic steroids, a Schedule III controlled substance, human growth hormone (HGH), and related products, including masking agents, to customers nationwide, including customers in the Eastern District of Kentucky. The customers would select the packages of anabolic steroids, HGH, and related products they wished to purchase, and the Defendant paid physicians to write prescriptions for those medications. These physicians included Dr. G.S., who was licensed in the state of Florida until March 2018, and Dr. J.W., Jr., who was not licensed in the state of Florida at all, and who used the electronic signature of another doctor to sign prescriptions. The physicians, including Dr. G.S. and Dr. J. W., Jr., did not conduct a physical examination of the customers, nor did they conduct legitimate telemedicine examinations. The Defendant knew these prescriptions were invalid, and further knew that the prescriptions were not issued for any legitimate medical purpose.

(c) Once customer payments were received, the invalid prescriptions for anabolic steroids and masking agents were filled at pharmacies and sent to the customer, typically via FedEx. Invalid prescriptions for HGH were often filled at the Defendant's premises, using HGH that J.M. had purchased on the black market.

(d) Numerous unlawful prescriptions were issued to customers in the Eastern District of Kentucky. By way of example only:

1. On or about June 29, 2015 and December 10, 2015, J.B., a resident of Pike County, Kentucky, received orders of Testosterone Cypionate, an anabolic steroid prescribed by Dr. G.S.. J.B. was not seen or examined in any way by Dr. G.S. prior to issuance of the prescriptions.

2. On or about May 15, 2017, A.S., a resident of Fayette County, Kentucky, received an order of Testosterone Cypionate, an anabolic steroid prescribed by Dr. G.S.. A.S. had received prior orders of the same controlled substance, and was not seen or examined in any way by Dr. G.S. prior to issuance of the prescriptions.

3. In and around May 2017, an undercover law enforcement officer working from Fayette County, Kentucky, posing as customer Bobby Richie, placed an order over the Internet for a ten-week supply of Testosterone Cypionate, an anabolic steroid, from the Defendant. Dr. G.S. issued a prescription for the requested controlled substances without seeing or examining "Bobby Richie" in any way.

2

4. In and around June 2017, an undercover law enforcement officer working from Fayette and Clark County, Kentucky, posing as customer "Chris Chaney," placed an order over the Internet for a combination of drugs including HGH and testosterone from the Defendant. Dr. G.S. issued prescriptions for the requested controlled substances without seeing or examining "Chris Chaney" in any way.

5. On or about October 19, 2017, October 1, 2018, February 6, 2019, April 24, 2019, July 1, 2019, and January 3, 2020, L.S., a resident of Fayette County, Kentucky, received orders of Testosterone Cypionate, an anabolic steroid prescribed by Dr. G.I., another physician associated with the Defendant. L.S. was not seen or examined in any way by Dr. G.I. prior to issuance of the prescriptions.

6. On or about August 14, 2018, October 15, 2018, February 14, 2019, May 1, 2019, August 30, 2019, October 28, 2019, and December 26, 2019, J.P., a resident of Kenton County, Kentucky, received orders of Testosterone Cypionate, an anabolic steroid prescribed by Dr. G.I.. L.S. was not seen or examined in any way by Dr. G.I. prior to issuance of the prescriptions.

(e) Between January 1, 2014 and February 1, 2020, the Defendant distributed more than 150,000 units of anabolic steroids pursuant to unlawful prescriptions. In exchange for its unlawful distribution of anabolic steroids, masking agents, HGH, and related products, the Defendant received payments from customers in excess of $25 million.

4. The statutory punishment for the sole Count of the Information is imprisonment for not more than 10 years, a fine of not more than $2,500,000, and a term of supervised release of not more than 3 years but not less than 2 years. A mandatory special assessment of $400 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the unlawful distribution of anabolic steroids and masking agents, as described above in paragraph 3, as well as the unlawful distribution of human growth hormone as described in the discovery provided to the Defendant and the United States Probation Office.

    (c) Pursuant to U.S.S.G. § 2D1.1(c)(10), the base offense level is 20, as the offense involved 60,000 units or more of Schedule III controlled substances.

    (d) Pursuant to U.S.S.G. § 2D1.1(b)(7), increase the offense level by 2 levels for distribution of a controlled substance through mass marketing by means of an interactive computer service.

    (e) Pursuant to U.S.S.G. § 2D1.1(b)(8), increase the offense level by 2 levels for distribution of an anabolic steroid and masking agent.

    (f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4. Further, no agreement exists about the appropriate calculation of a fine under U.S.S.G. Chapter 8.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G.

4

Chapter 5, Parts H or K. The Defendant also will not seek a sentence below the advisory sentencing guidelines range as determined by the Court at sentencing.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant will not contest the forfeiture of the following property currently subject to a civil judicial forfeiture proceeding in this district, Civil Action No. 20-CV-278-REW (the Civil Action):

   a. REAL PROPERTY KNOWN AS 3001 SOUTH OCEAN DRIVE, UNIT 1415, HOLLYWOOD, BROWARD COUNTY, FLORIDA;

   b. REAL PROPERTY KNOWN AS 1912 SOUTH OCEAN DRIVE, UNIT 2C, HALLANDALE, BROWARD COUNTY, FLORIDA;

   c. REAL PROPERTY KNOWN AS 485 LEAF DRIVE, PALM BEACH GARDENS, PALM BEACH COUNTY, FLORIDA;

   d. $9,568.87 IN UNITED STATES CURRENCY SEIZED ON OR ABOUT JUNE 30, 2020, FROM TD BANK ACCOUNT NO. ENDING IN 0680 IN THE NAME OF MODERN THERAPY LLC;

   e. $34,587.20 IN UNITED STATES CURRENCY SEIZED ON OR ABOUT JUNE 30, 2020, FROM TD BANK ACCOUNT NO. ENDING IN 1728 IN THE NAME OF OPTIMAL MD LABS LLC; and

   f. $81,433.03 IN UNITED STATES CURRENCY SEIZED ON OR ABOUT JUNE 30, 2020, FROM BANK OF AMERICA ACCOUNT NO. ENDING IN 4620 IN THE NAME OF SYNERGY INTEGRATIVE HEALTH AND WELLNESS LLC.

The Defendant acknowledges that a nexus exists between the above-identified properties and criminal conduct as set forth in the Amended Verified Complaint for Forfeiture *In Rem*

filed in the Civil Action. The Defendant agrees to the forfeiture of all interest in the properties described above and to take whatever steps are necessary to pass clear title thereto to the United States, including but not limited to the surrender of title, signing of a forfeiture agreement and/or consent decree of forfeiture, and execution of any other documents necessary to effectuate such transfers. The Defendant agrees to waive all rights to contest, and will not object to, or otherwise submit a claim in any forfeiture action brought against these properties and to withdraw any claims that it has made against the forfeiture of these properties. The Defendant further agrees to the imposition of a forfeiture money judgment against it in the amount of $11,046,801.14, which represents the amount of proceeds that the Defendant obtained as a result of the offense to which it is pleading guilty. The Defendant agrees that the forfeitable proceeds of the offense cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, pursuant to 21 U.S.C. § 853(p)(1).

10. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place

within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

11. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time.

The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

12. The Defendant agrees to relinquish any claim to, interest in, or ownership of any evidence seized during the execution of a search warrant at its premises on or about June 30, 2020, and agrees that such evidence may be purged by the Food and Drug Administration, Office of Criminal Investigations consistent with that agency's procedures.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 6/24/22        By: _____
                         Paul McCaffrey
                         Assistant United States Attorney

Date: 6/24/22        _____
                     Maria Murcia
                     Owner, Defendant Modern Therapy, LLC

Date: 6/24/22        _____ For Martin Roth
                     Martin Roth
                     Attorney for Defendant

9